IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>GUARDIAN ELDER CARE AT JOHNSTOWN, LLC, d/b/a/ RICHLAND HEALTHCARE AND REHABILITATION CENTER, *et al.*,<br><br>                       Debtors.[1] | Chapter 11<br><br>Case No. 24-70299 (JAD)<br>(Jointly Administered)<br><br>Related to ECF Nos. 31 & 34 |
| GUARDIAN ELDER CARE AT JOHNSTOWN, LLC, D/B/A/ RICHLAND HEALTHCARE AND REHABILITATION CENTER, *et al.*,<br><br>                       Movants,<br><br>                       v.<br><br>S&T BANK, ERIE ACQUISITION LLC, GPH ALTOONA HILLVIEW LP, GPH CLARION LP, GPH ERIE WESTERN RESERVE LP, GPH HASTINGS LP, GPH JOHNSTOWN LP, GPH LEWISTOWN LP, GPH MEYERSDALE LP, GPH OIL CITY LP, GPH SHIPPENVILLE LP, GPH TITUSVILLE LP, GPH UNIONTOWN LP, GPH WARREN KINZUA VALLEY LP, AND GPH WAYNESBURG LP; AND S&T BANK, N.A., PUBLIC CREDIT, LLC, AND KEYBANK NATIONAL ASSOCIATION,<br><br>                       Respondents. | |

---

[1] The last four digits of Guardian Elder Care at Johnstown, LLC d/b/a Richland Healthcare and Rehabilitation Center's federal tax identification number are 7907. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Guardian. The Debtors' mailing address is: 8796 Route 219, Brockway, Pennsylvania 15824.

**OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO
DEBTORS' FIRST DAY DIP FINANCING MOTIONS**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by and through his undersigned counsel, objects to: (1) *The Cuarzo Portfolio Debtors' Motion For Interim And Final Orders (I) Authorizing (A) Senior Secured, Superpriority Postpetition Financing And (B) The Use Of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; And (IV) Granting Related Relief* [D.I. 31] (the "Cuarzo DIP Motion"); and (2) *The Owned Portfolio/Ancillary Debtors' Motion For Interim And Final Orders (I) Authorizing (A) Senior Secured, Superpriority Postpetition Financing And (B) The Use Of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying The Automatic Stay; And (IV) Granting Related Relief* [D.I. 34] (the "Owned Portfolio/Ancillary DIP Motion," and together with the Cuarzo DIP Motion, the "DIP Motions") filed by the above-captioned debtors (the "Debtors"), and in support of his objection respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction of these cases pursuant to 28 U.S.C. §§ 1334, 151 and 157.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The U.S. Trustee has standing to appear and be heard on the DIP Motions pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586.

**FACTUAL HISTORY**

4. On July 29, 2024 (the "Petition Date"), the Debtors filed chapter 11 petitions in this Court. *See* D.I. 1.

5. To date, the Debtors have not filed schedules of assets and liabilities or statements of financial affairs. *See* Docket.

2

6. The U.S. Trustee has not yet conducted the initial debtor interview or appointed an official committee in the Debtors' cases.

7. On the Petition Date, the Debtors filed the DIP Motions. The first-day hearing is set for July 31, 2024, at 2:00 p.m.

8. The DIP Motions are supported by the *Declaration of Allen D. Wilen in Support of First Day Motions for Relief* (the "Wilen Declaration") [D.I. 35].

9. The Debtors are poised to sell their Cuarzo facilities and expect to file a Private Sale Motion. *See* D.I. 35 at ¶ 71. The Cuarzo DIP Motion includes milestones that seek to consummate the private sale, defined as the OTA transactions on or before 65 days from filing the motion to approve the OTA. D.I. 31 at ¶ 1 p.13.

10. The Owned Portfolio Debtors are expected to be the subject of a Bidding Procedures/Sale Motion. *See* D.I. 35 at ¶¶ 72-74. The Owned Portfolio Debtors, include certain Debtors that owe secured debt obligations to Public Credit, LLC. *Id.* at ¶ 36. Public Credit, LLC is a lender affiliated with Varischetti Holdings, LP, which is owned by trust entities nominally for the benefit of: (1) Peter C Varischetti; (2) Frank A Varischetti; and (3) Nicholas D Varischetti. *See id.* at ¶¶ 55 n. 8; ¶¶ 56-57. The Peter C and Nicholas D Varischetti trust entities own equity interests in non-debtor parent Guardian Healthcare Ancillary, and various other direct and indirect parents of Debtors in these cases. *Id.* at Ex. A through G.

11. The top-30 list of unsecured creditors shows over $33,000,000 in debt, and the Wilen Declaration identifies of that amount $7,303,985 is trade debt. *See* D.I. 1 & D.I. 35 at ¶ 66.

## ARGUMENT

12. Four principles for Courts to consider with regard to first day motions are:

First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the

3

debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.

Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.

Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*See In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

**A.    The Cuarzo DIP Motion**

13.    The Court should deny the Cuarzo DIP Motion unless a revision is made to paragraph 12(i) of the Cuarzo DIP Order. As proposed, that paragraph would truncate the 90/120-day challenge period in Local Rule 4001-2(b)(1)(B), to about 60 days or less.[2] The Cuarzo DIP Motion in the Summary of Material Terms in paragraph 1, only makes a conclusory statement that "the DIP Facility funding is critical to the success of these Chapter 11 Cases and the shortened Challenge Period is ultimately in the best interest of the estates in light of the alternative of not obtaining the necessary DIP funding." D.I. 31 at ¶ 1 p. 17. There is no evidentiary support in the Wilen Declaration for that assertion, and no discussion of the OTA transaction milestones included in the Cuarzo DIP relief.

---

[2] Paragraph 12(i) seeks to bind all other estate fiduciaries to the Debtors' stipulations in the Cuarzo DIP Order, unless a Challenge is brought no later than "sixty (60) days from entry of" the Interim Order. Those other estate fiduciaries, including an official committee of unsecured creditors are not yet in existence, and ought to be afforded the periods provided by Local Rule 4001-2(b)(1)(B).

4

14. The validity, priority, and extent of the DIP lenders' pre-petition liens do not need to be decided before any transaction, insofar as in a free-and-clear sale under Section 363(f), the liens will attach to the sale proceeds with the sale validity, priority, and extent as they attached to the assets pre-transaction. The validity, priority, and extent of those liens can be determined post-sale. Paragraph 12(i) should incorporate the 90/120-day challenge period in Local Rule 4001-2(b)(1)(B). The relief as currently proposed only seeks to prejudice the rights afforded under the Local Rules to parties by establishing shorter deadlines and moving the "goal posts" for those parties to negotiate against as part of Final relief on the Cuarzo DIP Motion.

B.     **The Owned Debtor/Ancillary DIP Motion**

15. The Court should deny the Owned Debtor/Ancillary DIP Motion unless several problematic provisions in it are revised.

16. *First*, finding H(viii)(a) and paragraph 30 seek to expand or characterize relief available to the DIP Lender Parties under section 364(e) of the Bankruptcy Code, by including "vacated" and "or otherwise" when the statute only protects "good faith" extensions of credit from "reversal or modification on appeal[.]" Compare D.I. 34-1 at p. 22; 58-59, *with* 11 U.S.C. § 364(e). The source of relief are the provisions of the Bankruptcy Code, and if Congress intended to protect lenders from vacatur of financing orders, or other relief than reversal or modification on appeal, section 364(e) could easily include such language. The expansion of the Bankruptcy Code's coverage is not necessary.

17. *Second*, paragraph 14 of the interim order seeks to truncate the 90/120-day challenge period in Local Rule 4001-2(b)(1)(B), to about 60 days or less. The provision mirrors the Cuarzo DIP relief, but even less support is provided by the Owned Debtor/Ancillary DIP Motion papers, a conclusory statement in paragraph 1's concise statement, asserts "[h]owever, the

timing of the stated Challenge Period is necessary in light of the expedited nature of the Chapter 11 Cases and the agreed upon Challenge Period was part of the 'give and take' in negotiations with the DIP Lenders." D.I. 34 at ¶ 1 p.23. There is no evidentiary support in the Wilen Declaration for that assertion, and no discussion of how abridging rights under the Local Rules is an acceptable "give and take" for the Debtors to engage in on behalf of other parties in interest, some of whom are not yet in existence, like an official committee of unsecured creditors.

18. The validity, priority, and extent of the DIP lenders' pre-petition liens do not need to be decided before any transaction, insofar as in a free-and-clear sale under Section 363(f), the liens will attach to the sale proceeds with the sale validity, priority, and extent as they attached to the assets pre-transaction. The validity, priority, and extent of those liens can be determined post-sale. Paragraph 14 should incorporate the 90/120-day challenge period in Local Rule 4001-2(b)(1)(B). The relief as currently proposed only seeks to prejudice the rights afforded under the Local Rules to parties by establishing shorter deadlines and moving the "goal posts" for those parties to negotiate against as part of Final relief on the Owned Debtor/Ancillary DIP Motion.

19. *Third*, paragraph 15(c)'s release provision creates a scenario where the proposed Roll-Up DIP Advance to the Public Credit lender will be fully approved upon entry of a final order, and the underlying Public Credit obligations will be no longer subject to the Challenge Period.

20. Unlike paragraph 15(b) which includes a qualifier identifying "subject only to Paragraph 14 above [the Challenge Provision]" and applies to other prepetition secured creditors, paragraph 15(c) is not qualified or subject to Challenge Provision. For new money advances that may not be a problem, as those are occurring postpetition upon the Court's approval. It is inappropriate for such relief to be afforded to insider lenders of the Debtor on account of a requested Roll-Up of prepetition funds. While the Roll-Up is not being sought for interim

6

approval, the structure of this provision creates a situation where a Committee or other party may need to seek to commence a challenge during the initial 21 days of these cases, or else risk having rights to challenge the validity, priority, and extent of those liens held by affiliates of insiders being released should the Court enter a final order approving the Roll-Up.

21.     The Court should deny this relief because the Debtors have not shown extraordinary circumstances exist.  *See* W.PA. LBR 4001-2(b)(i)(E) and W.PA. LBR 4001-2(c).  There is no reason that new money advanced post-petition by other parties should immunize money advanced pre-petition from challenge by affiliates of insiders of the Debtors.  A lender insisting on a particular deal term is not an extraordinary circumstance, and to the extent the roll-up seeks to postdate eve-of-bankruptcy debt to the date of the Owned Debtor/Ancillary DIP Order, the Court "cannot make the record what it is not." *Roman Catholic Archdiocese v. Feliciano*, 589 U.S. 57, 65 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)).  The top-30 list of unsecured creditors shows over $33,000,000 in debt. It is unclear what general unsecured creditor recoveries will ultimately look like. The Owned Debtor/Ancillary DIP Order should not prejudice a committee's ability to investigate and challenge the pre-petition liens, which would occur if the threat of a full release on the Public Credit obligations is approved as requested in this interim order.

22.     *Fourth*, paragraph 21 establishes a series of Termination dates.  The interim order does not include any protection that the Court's schedule could cause a technical default as to the termination dates. The U.S. Trustee objects to the provision as currently drafted, and requests it be modified to provide that such dates are "subject to the availability of the Court" whenever Court action is contemplated.  This applies to the Milestones sought in Exhibit 3 as well.

23. *Fifth*, paragraph 22 seeks to restrict the Court's discretion to hear matters during the Remedies Notice Period, by limiting issues for the U.S. Trustee or any Committee to "seek an emergency hearing before this Court for the purpose of obtaining an order authorizing the Owned Portfolio/Ancillary Debtors' continued use of Cash Collateral or to contest whether an Event of Default has occurred." D.I. 34-1 at ¶ 22. The Court's discretion to hear other appropriate matters should not be limited at the insistence of the DIP Lenders. Language that addresses the U.S. Trustee's objection this point is found in the Cuarzo DIP proposed interim order: "or to raise such other issues that the Court determines to hear." D.I. 31-1 at ¶ 20(i).

## CONCLUSION

The U.S. Trustee's counsel has been working with lenders' counsel and Debtors' proposed counsel in an effort to narrow the open issues at the first-day hearing. The U.S. Trustee's counsel will endeavor to continue those efforts up until the hearing. Subject to a continuing review of the redlined orders, the U.S. Trustee's other informal questions and comments about the DIP Motions have been resolved. Such resolution is without prejudice to any argument or objection the U.S. Trustee may advance (1) at the final hearing on the DIP Motions, and/or (2) in any other case.

[Remainder of Page Left Blank Intentionally]

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court deny the DIP Motions unless the above issues are satisfactorily addressed and grant such other relief as is fair and just.

Dated: July 30, 2024

Respectfully submitted,
**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Timothy J. Fox*
Timothy J. Fox, Jr., Esq. (DE Bar No. 6737
& Virginia Bar No. 86157)
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
Timothy.Fox@usdoj.gov

Kate M. Bradley, Esq.
OH Bar ID 0074206
William Buchanan, Esq. (PA #202843)
William S. Moorhead Federal Building
1000 Liberty Ave., Suite 1316
Pittsburgh, PA 15222
(412) 644-4716 Telephone
(412) 644-4785 Facsimile
kate.m.bradley@usdoj.gov
william.buchanan@usdoj.gov

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on July 30, 2024, a copy of the *Omnibus Objection of the United States Trustee to Debtors' First Day DIP Financing Motions* was served upon the parties listed below via e-mail:

Proposed Counsel to the Debtors,
Saul Ewing LLP,
1500 Market Street,
38th Floor, Philadelphia, Pennsylvania 19102,
Attn: Jeffrey C. Hampton (jeffrey.hampton@saul.com) and
Sabrina Espinal (sabrina.espinal@saul.com),

And

1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801,
Attn: Mark Minuti (mark.minuti@saul.com),
Monique B. DiSabatino (monique.disabatino@saul.com) and
Paige N. Topper (paige.topper@saul.com)

Counsel to S&T,
Grenen & Birsic, PC,
One Gateway Center,
9th Floor, Pittsburgh, Pennsylvania 15222,
Attn: James F. Grenen (jgrenen@grenenbirsic.com) and
Joseph S. Sisca (jsisca@grenenbirsic.com);

Counsel to the KeyBank National Association,
Vorys, Sater, Seymour and Pease LLP,
52 East Gay Street, Columbus, Ohio 43215,
Attn: Melissa S. Giberson (msgiberson@vorys.com)
and Kari B. Coniglio (kbconiglio@vorys.com);

Counsel to Public Credit,
Campbell & Levine, LLC,
310 Grant Street, Suite 1700,
Pittsburgh, Pennsylvania 15219,
Attn: Paul Cordaro (pcordaro@camlev.com) and
Jeanne S. Lofgren (jlofgren@camlev.com)

*/s/ Timothy J. Fox*