FILED
2/5/25 10:42 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Case No. 24-70299 (JAD) |
| ) | |
| GUARDIAN ELDER CARE AT ) | Chapter 11 |
| JOHNSTOWN, LLC, d/b/a ) | |
| RICHLAND HEALTHCARE AND ) | (Jointly Administered) |
| REHABILITATION CENTER, *et al.*, ) | |
| ) | Related to ECF No. 932 |
| Debtors.¹ ) | |
| _____ X | |
| ) | |
| OFFICIAL COMMITTEE OF ) | |
| UNSECURED CREDITORS OF ) | |
| GUARDIAN ELDER CARE AT ) | |
| JOHNSTOWN, LLC, d/b/a ) | |
| RICHLAND HEALTHCARE AND ) | |
| REHABILITATION CENTER, *et al.*, ) | |
| ) | |
| Movants, ) | |
| ) | |
| -v- ) | |
| ) | |
| S&T BANK, N.A., ) | |
| ) | |
| Respondent. ) | |
| _____ X | |

**MEMORANDUM OPINION**

**I.
INTRODUCTION**

---

[1] The last four digits of Guardian Elder Care at Johnstown, LLC d/b/a Richland Healthcare and Rehabilitation Center's federal tax identification number are 7907. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Guardian. The Debtors' mailing address is: 8796 Route 219, Brockway, Pennsylvania 15824.

1

The Official Committee of Unsecured Creditors (the "Committee") moves for derivative standing to pursue causes of action against S&T Bank, N.A. ("S&T Bank") on behalf of the Debtors' estates.[2] The causes of action—dubbed as an effort to recover "Bankruptcy-Created Enhancements to Value"—seek to diminish the secured claim of S&T Bank by attributing a portion of sale proceeds it realized in this case by an amount equal to an amorphous "value" allegedly generated by the bankruptcy sale process itself.

That is, S&T Bank held a blanket lien on certain assets of the estates. As a result of sales approved by this Court, S&T Bank's liens attached to the sale proceeds. See e.g. *Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Private Sale/Transfer of the Cuarzo Portfolio Debtors' Assets and Operations; (II) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief,* ECF No. 557, and *Order (I) Approving Sale of Substantially All of Owned Facilities Debtors' Assets, Other than Excluded Assets, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Approving Release Agreement; (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief,* ECF No. 820; see also 11 U.S.C. §§ 363(f) and 552(b)(1).

The Committee, however, believes that S&T Bank should not be permitted to receive the price paid by the purchaser for its collateral. Rather, the

---

[2] The motion filed by the Committee is a core proceeding over which this Court has the requisite subject-matter jurisdiction to enter a final order. See 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(O) and 1334.

2

Committee contends that S&T Bank's allowed secured claims (and recovery on account of the same) should be limited and equal to the price paid by the purchaser for the collateral <u>less</u> any intangible and undefined "Bankruptcy-Created Enhancements to Value."

While the Court finds the Committee's motion for relief[3] to be interesting, the theory propounded by the Committee is unsupported by law, has never been recognized by any court, and is untenable under both the Bankruptcy Code and established precedent. For the reasons that follow, the Committee's Motion shall be denied.

## II.
## LEGAL STANDARD FOR DERIVATIVE STANDING

A creditors' committee may obtain derivative standing to assert estate claims only where: (1) the claims are colorable and the debtor has unjustifiably refused to pursue them; (2) the pursuit of the claims would benefit the estate; and (3) the creditors' committee has obtained permission from the court to prosecute the claims. <u>Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 566-67 (3d Cir. 2003); <u>Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)</u>, 326 B.R. 532, 543 (W.D. Pa. 2005).

---

[3] *Motion of the Official Committee of Unsecured Creditors for (I) Leave, Standing, and Authority to Commence and Prosecute Certain Claims and Causes of Action on Behalf of the Debtors' Estates, (II) Exclusive Settlement Authority, and (III) a Bridge Order Extending the Challenge Deadline as Appropriate* (the "<u>Motion</u>"), ECF No. 932.

These requirements ensure that estate litigation is pursued only when it serves a meaningful purpose, balancing the competing interests of secured and unsecured creditors. The Court must evaluate the factual and legal basis of the claim with particular scrutiny, as granting derivative standing inappropriately may lead to unnecessary litigation that delays case resolution and drains estate resources. As described more fully below, the Court finds that the Committee has failed to meet any of the requirements meriting the granting of derivative standing.

### III.
### ANALYSIS

**The Committee Has Not Asserted a Colorable Claim**

A claim is colorable if it presents some factual support and a reasonable legal basis. See, e.g., PW Enters., Inc. v. North Dakota Racing Comm'n (In re Racing Servs., Inc.), 540 F.3d 892, 900 (8th Cir. 2008)(holding that a "creditor thus does not meet its burden with a naked assertion . . ."); Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.), 330 B.R. 364, 369 (Bankr. S.D.N.Y. 2005)(court need only be satisfied that there is "some factual support"). The Committee's claim does neither.

The linchpin of the Committee's argument is that S&T Bank's secured claim should be reduced because the bankruptcy process itself enhanced the value of the Debtors' assets. But bankruptcy law does not recognize such a surcharge against secured creditors.

Under 11 U.S.C. § 506(a)(1), a secured claim is valued based on the "creditor's interest in the estate's interest in [the] property[.]" Nowhere does this provision suggest that courts should deduct some amorphous "bankruptcy-created value" from that claim. Instead, the value of collateral is determined based on "the proposed disposition or use of such property[,]" not on speculative theories of enhancement. See Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 961 (1997).[4]

Moreover, the Bankruptcy Code provides a clear mechanism for assessing and charging expenses against the interests of secured creditors—11 U.S.C. § 506(c)—which allows only for a surcharge of "reasonable" and "necessary" costs incurred in preserving or disposing of collateral. The Committee, however, has not invoked this provision; nor has it alleged that the "Bankruptcy-Created Enhancements to Value" it seeks to recoup were incurred specifically to benefit S&T Bank. In fact, a fair reading of the record is that the Committee's attempt to circumvent section 506(c) is a tacit admission that the statute does not support the Committee's position.

---

[4] The Committee contends that the valuation of S&T Bank's lien should be determined as of the bankruptcy filing date, arguing that any post-petition value appreciation should not be credited to the secured creditor. However, this argument is inconsistent with In re Heritage Highgate, Inc., 679 F.3d 132 (3d Cir. 2012), where the Third Circuit emphasized that the valuation date must reflect the intended disposition of the collateral. Thus, the Third Circuit rejected a rigid approach that would fix valuation at the time of the bankruptcy filing. In fact, in Heritage Highgate, the court used a date subsequent to the petition date to value collateral—the confirmation date. As the court explained, "[a]pplying these precepts to the matter at hand, we hold that the Bankruptcy Court properly concluded that the fair market value of the Project as of the confirmation date controls whether the [secured creditors'] claims are secured or not." Heritage Highgate, 679 F.3d at 143. Using a flexible approach to valuation applies equally in this dispute involving S&T Bank. Where the intended disposition of the assets was through a court-approved sale, the relevant valuation date should be when the sale was approved, as that is the point at which the market determined the value of the collateral.

5

Furthermore, the Committee's reliance on a hypothetical enhancement of value fails because such enhancements, even if they exist, are already accounted for in the value assigned to collateral through the section 363 sale process. The Committee essentially argues that because bankruptcy procedures allowed the sale of assets free and clear of liens, those procedures created some undefined additional value. However, this argument ignores the fact that section 363 sales are designed to provide market-tested valuations for assets that are actually sold. Courts routinely recognize that value is determined for an asset sold by what a willing buyer will pay in an open-market sale.

This Court's conclusion is fully consistent with the Third Circuit's reasoning in Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.), 432 F.3d 448 (3d Cir. 2006), which directly addressed the issue of how "value" should be determined when assessing a secured creditor's claim in the context of a bankruptcy sale. In SubMicron, a chapter 11 plan administrator sought to limit a secured creditor's recovery by way of a section 363(k) credit bid by arguing that the creditor's lien should attach only to the "economic value" of the collateral—an amount purportedly less than the full claim of the secured creditor. The Third Circuit squarely rejected this approach, holding that: "[T]he market's reaction to a sale best reflects the economic realities of assets' worth." SubMicron, 432 F.3d at 461.

The SubMicron Court declined to impose a judicially constructed cap on the value of a secured creditor's collateral, reaffirming that "value" in an actual bankruptcy sale context is determined not by abstract or hypothetical

6

calculations but by what a willing buyer is prepared to pay in a competitive process. Id.

*Sub judice*, the Committee's argument—that some portion of the proceeds from the sale should be reallocated away from S&T Bank based on speculative notions of "Bankruptcy-Created Enhancements to Value"—is foreclosed by SubMicron because it directly contradicts this market-driven approach. Moreover, the holding in SubMicron, while limited in the sense that it addressed section 363(k) credit bid rights, is consistent with the conclusion that in the actual sale context the proper application of section 506(a) requires assessing the value of a secured claim based on the price paid for the collateral—not through artificial reductions based on theoretical adjustments.

Thus, SubMicron makes clear that the estate cannot carve out artificial "enhancements" from the secured creditors' collateral value simply because the bankruptcy process facilitated a sale. To hold otherwise would violate the plain language of section 506(a), which ties a secured creditor's claim to the actual value realized from the collateral, not a lesser, hypothetical valuation that arbitrarily favors unsecured creditors.

Accordingly, the Committee's attempt to reduce S&T Bank's recovery by imposing a subjective and extralegal reallocation of "value" contradicts SubMicron and must be rejected.[5]

---

[5] The Committee relies upon the Third Circuit's decision in In re Heritage Highgate, Inc. to support its position. The Committee's reliance on Heritage Highgate is misplaced. That case involved the valuation of collateral for plan confirmation purposes when that property is to be retained by the reorganized debtor. But the instant case involving S&T Bank's collateral is different. Here, S&T Bank's collateral has already

7

For the sake of completeness, the Court notes that while the Committee did not cite any binding precedent supporting its legal theory, counsel did present at the hearing the case of <u>Official Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)</u>, 501 B.R. 549 (Bankr. S.D.N.Y. 2013)("<u>ResCap</u>"). The <u>ResCap</u> decision is 75 pages in length, and since it was only presented at the hearing, neither S&T Bank nor any other party-in-interest has had sufficient time to conduct a robust review of the decision. The Court, however, has read it.

<u>ResCap</u> addressed the valuation of "goodwill" in the context of secured claims. While <u>ResCap</u> does not directly support the Committee's theory, its discussion of post-petition goodwill is relied upon by the Committee for the unremarkable proposition that some forms of value created in bankruptcy should not be attributed to a secured creditor's collateral. This Court has no quarrel with the opinion in <u>ResCap</u>, and finds the opinion to be well written. The Committee's reliance on <u>ResCap</u>, however, is misplaced for several reasons.

First, unlike the facts of <u>ResCap</u>, the sales at issue in the instant bankruptcy cases did not involve the sale of goodwill. Rather, the sales involved the sale of real estate and other tangible property that were subject to S&T Bank's liens. As such, <u>ResCap</u>'s discussion of post-petition enhancements to (or the post-petition acquisition of) goodwill has no application to the instant cases.

---

been authorized to be sold in a section 363 sale, meaning its value has been set by the market and there is no need to engage in a hypothetical exercise.

Second, ResCap does not go as far as requiring a secured creditor to forfeit post-petition value increases to its collateral when they are generated through the bankruptcy process. A closer examination of the opinion reveals that ResCap involved whether goodwill itself was part of the secured creditor's collateral—not whether a secured creditor must share post-petition value increases with unsecured creditors. In this regard, the dispute in ResCap dealt with whether a secured creditor had an adequate protection lien occasioned by the devaluation of its collateral as a result of the pendency of the bankruptcy case. The Court in ResCap simply held that the creditor did not demonstrate diminution in collateral value because the alleged collateral was worthless as of the petition date.[6]

Third, the ResCap Court reaffirmed that secured creditors recover based on actual market-driven collateral valuations. ResCap, 501 B.R. at 591-95 (discussing market driven approach as opposed to foreclosure value). And nowhere did the court in ResCap endorse a judicial reallocation of secured claim proceeds to unsecured creditors merely based on speculative "bankruptcy enhancements."

Fourth, a fair reading of ResCap is that the opinion aligns with the principle that secured creditors are entitled to the full proceeds of **their collateral** as realized in a bankruptcy sale, unless the Bankruptcy Code

---

[6] The ResCap Court also found that the creditor in that case failed to prove that it had a "proceeds" lien by operation of 11 U.S.C. § 552(b), observing that: "To establish a lien on the goodwill created [post-petition], the [putative secured creditor] would need to demonstrate that the goodwill was the product of their prepetition collateral. They did not meet this burden." ResCap, 501 B.R. at 612.

9

explicitly provides otherwise (e.g., a section 506(c) surcharge). And, the Committee in the instant matter has not demonstrated that the "otherwise" is present based on the record in these cases.

**The Debtors Have Not Unjustifiably Refused to Bring These Claims**

Derivative standing is inappropriate where the debtor has not unjustifiably refused to bring a claim. See Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 905 (2d Cir. 1985). Here, the Debtors have stipulated, as part of the Final DIP Order,[7] that S&T Bank's liens are valid and enforceable. The Committee has offered no basis to override this stipulation, which was approved by the Court and incorporated into the sale process.

Further, the sale of the Debtors' assets—including those encumbered by S&T Bank's liens—was conducted pursuant to an approved section 363 process, culminating in final sale orders that directed the distribution of proceeds. The Committee was free to object to that process but did not. Now, after the fact, it seeks to unwind fundamental elements of that transaction. That is not a basis for derivative standing; it is an attempt to rewrite the deal.

S&T Bank also argues that the ultimate relief sought by the Committee is barred by the law-of-the-case doctrine, which precludes reopening settled matters that were already determined in a prior judicial ruling. See, e.g., Reinert

---

[7] See *Final Order (I) Authorizing the Owned Portfolio/Ancillary Debtors to Obtain Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Authorizing the Use of KeyBank's, Public Credit's and S&T Bank's Cash Collateral; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* (the "Final DIP Order"), ECF No. 434.

10

v. Bould (In re Reinert), Adv. No. 14-02204-JAD, 2015 Bankr. LEXIS 803 at *22 (Bankr. W.D. Pa. March 12, 2015). The Court agrees.

The Final DIP Order set forth the parameters of S&T Bank's claims and liens, and the sale orders ratified those terms. By way of example, paragraph 15(a) of the Final DIP Order protects S&T Bank from recharacterization of its liens against sale proceeds based upon the "equities of the case." See Final DIP Order, p. 42, para. 15(a); see also 11 U.S.C. § 552. Allowing the Committee to challenge these findings now under the rubric of bankruptcy-related "enhancements" would upend the principles of finality and judicial efficiency.

### The Proposed Litigation Would Not Benefit the Estate

Even if the claims were colorable (which they are not), and even if the Debtors had unjustifiably refused to bring them (which they have not), the Court must still assess whether the litigation would benefit the estate. Official Comm. of Unsecured Creditors of America's Hobby Ctr., Inc. v. Hudson United Bank (In re America's Hobby Ctr., Inc.), 223 B.R. 275, 284 (Bankr. S.D.N.Y. 1998). Here, the balance weighs decisively against granting standing.

First, pursuing this litigation would impose substantial costs on the estates. S&T Bank, having already released $3.2 million of its liens to facilitate the sale process, would be forced to defend against a lawsuit supported by no precedent in bankruptcy law. Further, protracted litigation risks adding further administrative expenses (and reducing the pool of funds available to pay unsecured creditors) thereby jeopardizing the very recoveries the Committee purports to advance.

Second, the Committee's theory would undermine the predictability of secured lending in bankruptcy. If courts were to allow retroactive reallocation of sale proceeds based on nebulous "enhancements," secured lenders would be disincentivized from consenting to sales, providing debtor-in-possession financing, or negotiating in good faith. This would be to the detriment of all future debtors seeking to reorganize in bankruptcy.

## IV.
## CONCLUSION

For the reasons set forth above, the Court concludes that the Committee has failed to establish the prerequisites to the privilege of derivative standing. Accordingly, its motion shall be **DENIED**.

An Order consistent with this *Memorandum Opinion* shall be issued.

Date:  February 5, 2025

_____jsf
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

Case administrator to serve:

All parties in interest